# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT PADUCAH
## CIVIL ACTION NO. 5:17-CV-00169-TBR

**KEVAN PALUSO**                                                    **PLAINTIFF**

**v.**

**SONNY PERDUE, SECRETARY UNITED STATES
DEPARTMENT OF AGRICULTURE.**                              **DEFENDANT**

## MEMORANDUM OPINION

This matter comes before the Court upon a Motion to Dismiss filed by Defendant and

Secretary for the United States Department of Agriculture, Sonny Perdue. (R. 27). Plaintiff,

Kevan Paluso, has responded. (R. 29). The matter is now ripe for adjudication. For the reasons

that follow, the Defendant's Motion to Dismiss, (R. 27), is HEREBY GRANTED.


BACKGROUND

This case arises from Kevan Paluso's allegations that he was unlawfully retaliated

against, discriminated against, harassed, and ultimately terminated by his superiors at the United

States Forestry Department based on his age and prior Equal Employment Opportunity (EEO)

activity. (R.1). This case's procedural history and background is, to say the least, tangled. To

straighten it out, as best it can, the Court will start from the relevant time-line's beginning and

proceed to its end in chronological fashion, stopping periodically to summarize things along the

way.

Plaintiff, Kevan Paluso, was born in February 17, 1960. (R. 29). He began working for

the Federal Government in 2001. (*Id.*). In 2009, Paluso became Area Transportation Program

Manager with the United States Forest Service at Golden Pond, Kentucky. (*Id.*). He was in charge of overseeing private and state road contractors. (*Id.*). His first line supervisor was Jeff Laird, and his Second Line Supervisor was Tina Tilly. (*Id.*).

On March 11, 2016, Paluso filed EEO complaint FS-2016-00191. (R. 27, Ex. 1). In that Complaint, Paluso alleged that he was subjected to discrimination and non-sexual harassment based on his age and reprisal for prior EEO activity. (*Id.*). Paluso made the following specific allegations:

1. on November 17, 2015, his supervisor rescinded his designation as a Contracting Officer's Representative; and
2. on several dates, he was subjected to various acts of harassment, including but not limited to:
   a. in October and November 2015, he was "stalked" in the office parking lot;
   b. from October 2015 to December 2015, his co-workers repeatedly displayed the hand gesture "L" (for "loser") towards him;
   c. on an unspecified date, several FS colleagues conspired to give him a tainted sandwich; and
   d. on unspecified dates, management ignored his concerns about harassment and directly and indirectly demeaned, antagonized, bullied, and subjected him to hostile treatment.

(*Id.*).

On October 31, 2016, Paluso filed EEO complaint FS-2016-00817. In FS-2016-00817, Paluso again complained of harassment, discrimination, and reprisal based on his age and prior EEO activity. (R. 27, Ex. 3). Neither Party has provided the Court with documentation related to complaint FS-2016-00817 so as to allow the Court to recount the exact allegations brought by Paluso therein. However, as will become clear below, complaint FS-2016-00817 is, in large part, duplicated by Paluso's next EEO complaint.

On July 25, 2017, Paluso filed EEO complaint FS-2017-00557. (*Id.*). Like his previous two, complaint FS-2017-00557 complains of harassment, discrimination, and reprisal based on

Paluso's age and prior EEO activity. *(Id.)*. Paluso makes the following specific allegations in complaint FS-2017-00557:

1. in the summer of 2016, Paluso was issued a Notice of Proposed suspension;
2. from the summer of 2016, until October 11, 2016, management required that he work off-site, however failed to provide him supervision, guidance, a duty location and telework site (including office furniture, internet access and office supplies) to perform his duties as such;
3. on several dates, he was subjected to various incidents of harassment including but not limited to:
   a. in the Summer of 2016, management repeatedly required him to provide a medical statement to ensure he was not a threat and subsequently abandon it without explanation;
   b. on unspecified dates, management officials demeaned, abused, traumatized, antagonized and treated him differently;
   c. on an unspecified date, he was required by management to drive his personal vehicle to attend a working meeting;
   d. on an unspecified date, management provided him an unsafe government vehicle to attend an off-site meeting;
   e. on an unspecified date, management failed to investigate his repeated complaints against a co-worker; and
   f. on an unspecified date, management refused to inform him of how an alleged poor performance matter could be rectified.

(R. 1-1).

So, by July 25, 2017, Paluso had three separate EEO complaints pending—FS-2016-00191, FS-2016-00817, and FS-2017-00557. All three complaints stem from alleged harassment, discrimination, and reprisal based on Paluso's age and prior EEO activity.

On August 2, 2017, The United States Department of Agriculture dismissed Paluso's third EEO complaint, FS-2017-00557. (R. 1-1). Complaint FS-2017-00557 Claims 1, 2, and 3(a)-(e) were dismissed for two primary reasons: First, those claims were untimely because Paluso waited approximately ten months to contact an EEO counselor concerning the alleged conduct, and second, those claims duplicated the claims alleged in Complaint FS-2016-00817, Paluso's second EEO claim. *(Id.)*. EEO Complaint FS-2017-00557's only remaining claim, Claim 3(f), was singled out and dismissed for failure to state an adverse employment action. *(Id.)*.

On November 3, 2017, Paluso, through counsel, Ms. Pamela Bratcher, filed a Complaint with this Court. (R. 1). His Complaint states that Paluso "filed to assert claims that were denied by the issuance of a Final Agency Decision dated August 2, 2017, [the Final Agency Decision dismissing EEO complaint FS-2016-00557]." (*Id.*). Under the title "Jurisdiction and Venue," the Complaint states only the following: "Jurisdiction and venue in this district is proper as the Plaintiff lives and resides in this district. The Court has pendent jurisdiction over Plaintiff's state law claims. (*Id.*). The employment practices herein and after alleged to be unlawful were committed in the Western District of Kentucky." (*Id.*). The Complaint relates the same factual allegations as those found in the EEO complaint FS-2017-00557. (*Id.*; R. 1-1). In addition to those factual allegations, the Complaint also alleges that "in the fall of 2017 management emailed to Plaintiff's family members a negative performance review that violated Plaintiff's right to privacy and caused the Plaintiff emotional distress and humiliation." (R. 1).

The Complaint lists five Counts against the Defendant: Count I. Violation of the Age Discrimination and Employment Act of 1967, Count II. Hostile Working Environment and Retaliation Based Upon Filing of Previous EEO Complaints; Independent Claim of Hostile Work Environment, Count III. Constructive Discharge, Count IV. Invasion of Privacy, and Count V. Intentional Infliction of Emotional Distress. (*Id.*). Paluso prays for the following relief: (1) compensatory damages for mental and emotional injuries, humiliation, and ridicule, and past and future lost wages in the amount of $600,000, (2) punitive damages in the amount of $400,000, (3) trial by jury, and (4) attorney's fees and court costs. (*Id.*).

On January 26, 2018, after Paluso had filed suit, the United States Department of Agriculture removed Paluso from service. (R. 8-2). On March 14, 2018, Paluso appealed his removal from service to the United States Merit System Protection Board (MSPB). (*Id.*). On

April 11, 2018, the MSPB dismissed Paluso's appeal as untimely because it was sixteen-days late. (*Id.*).

On April 10, 2018, the Unites States Department of Agriculture dismissed EEO complaint FS-2016-00191, Paluso's first EEO Complaint, because Paluso raised the same issues in the instant litigation as were alleged therein. (R. 27, Ex. 2). An Administrative Law Judge construed Paluso's filling the instant federal suit as a voluntary dismissal of complaint FS-2016-00191. (*Id.*).

On June 15, 2018, the Court in response to Paluso's motion for default judgment, issued a Memorandum Opinion & Order alerting Paluso that he had not effectuated service. (R. 7).

On June 20, 2018, Paluso amended his Complaint to appeal from the Final Order of the United States Department of Agriculture dismissing EEO Complaint FS-2016-00191, and to appeal from the MSPB's decision to dismiss Paluso's appeal concerning his removal from service. (R. 8).

To summarize, at this point, Paluso has filed a Complaint with this Court asserting, among others, those claims dismissed by the Department of Agriculture in EEO Complaint FS-2016-00557. Paluso has amended that Complaint to appeal the Merit System Protection Board's dismissal of his appeal regarding his termination, and the Department of Agriculture's dismissal of EEO Complaint FS-2016-00191. At this point, EEO Complaint FS-2017-817 remains pending in the administrative process. Finally, despite instruction from the Court, Paluso has, to this point, yet to effectuate proper service upon the Defendant.

On September 20, 2018, in response to Paluso's second motion for default judgment, the Court again notified Paluso that he had still not effectuated service upon the Defendant. (R. 20).

On October 11, 2018, the Department of Agriculture dismissed EEO Complaint FS-2016-00817. (R. 27, Ex. 3). Paluso's time within which to appeal the Department of Agriculture's dismissal of Complaint FS-2016-00817 to this Court expired on January 9, 2019. Five days later, On January 14, 2019, Paluso filed a Notice of Appeal with this Court concerning FS-2016-00817's dismissal. (R. 20).

On January 28, 2019, over a year after filling the instant Complaint, Paluso finally effectuated service upon the Defendant, and on March, 14, 2019, the Defendant filed the instant Motion to Dismiss. (R. 26; R. 27).


STANDARD

Although the Defendant only alludes to Federal Rule of Civil Procedure 12(b)(6) in moving for dismissal, he has moved to dismiss various portions of the Complaint based on subject matter jurisdiction, and for failure to effectuate timely service. The Court will consider the Defendant's various arguments for dismissal pursuant the proper corresponding standards. Thus, the Court will consider the Defendant's jurisdictional arguments pursuant to Federal Rule of Civil Procedure 12(b)(1), the Defendant's argument for dismissal for failure to effectuate timely service pursuant to Rule 12(b)(5), and the Defendant's remaining arguments pursuant to Rule 12(b)(6).

A. Motion to Dismiss Pursuant to 12(b)(1) for Lack of Subject-Matter Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may assert by motion the defense of "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which

case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In a challenge to the factual basis, however, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case . . . no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)). Therefore, while, "when a Rule 12(b)(6) motion is converted to a Rule 56 motion for summary judgment, the court, upon finding genuine issues as to material facts, must deny the motion; . . . on a Rule 12(b)(1) challenge to subject matter jurisdiction, the court is empowered to resolve factual disputes." *Id.* (quoting *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)). Finally, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Bauer v. RBX Indus. Inc.*, 368 F.3d 569 (6th Cir. 2004).

B.  Motion to Dismiss Pursuant to 12(b)(5) for Failure to Effectuate Timely Service.

"Rule 12(b)(5) permits defendants to seek dismissal of a plaintiff's complaint because of the insufficiency of service of process." *Phillips v. Tenn. Hotel Supply*, 2006 U.S. Dist. LEXIS 19516 *2 (D. Tenn. 2006). "In considering a motion to dismiss, pursuant to Rule 12(b)(5), this Court must accept as true all well pleaded allegations of the complaint, although reference to the record is permissible to determine the alleged insufficiency of service of process." *Thompson v. Kerr*, 555 F. Supp. 1090, 1093 (S.D. Ohio, 1982).

C.   Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim

The 12(b)(6) standard for failure to state a claim on which relief can be granted "governs dismissals for failure to state a claim under [§ 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010). Under that standard, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

When applying the Rule 12(b)(6) standard, the court must presume all of the factual allegations in the complaint are true. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may dismiss the case "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677-79). "*Pro se* complaints are to be

held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Otworth v. Budnik*, 594 F. App'x 859, 861 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citation omitted)).

Under the 12(b)(6) standard, the Court may consider "exhibits attached [to the complaint] . . so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). "Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings" for the purpose of a 12(b)(6) motion to dismiss. *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999). When a document is mentioned in the complaint and is a necessary part of the plaintiffs claim, the defendant may submit a copy of the document to the court attached to a motion to dismiss. *Id.* The motion to dismiss does not need to be converted to a motion for summary judgment when a document central to the complaint is attached to the motion to dismiss. *Id.*

DISCUSSION

The Defendant makes numerous arguments to dismiss various portions of Paluso's Complaint. First, the Defendant argues that Counts I and II in the initial Complaint should be dismissed for failure to exhaust administrative remedies and for failure to state a claim. Second, the Defendant argues that Count III should be dismissed because Paluso failed to allege constructive discharge in his underlying EEO complaint, and because Paluso never quit his job. Third, the Defendant argues that the Court has no jurisdiction over Counts IV and V because Paluso failed to exhaust administrative remedies as required by the Federal Tort Claims Act.

Fourth, the Defendant argues that the Court has no jurisdiction over Paluso's appeal from the MSPB's decision because the Claim is untimely. Fifth, the Defendant argues that the Court should dismiss Paluso's claims for noneconomic and punitive damages, as they are not permitted by the ADEA. Finally, the Defendant argues that the Court should dismiss Paluso's demand for a jury trial, as it is not permitted by the ADEA.

In addition to these smaller piecemeal arguments, the Defendant makes the more sweeping arguments that all Paluso's claims should be dismissed for Paluso's failure to state grounds for the Court's jurisdiction in his jurisdictional statement and for failure to effectuate timely service. As jurisdiction is a threshold issue, the Court will start by addressing the Defendant's jurisdictional arguments. *See Mair v. Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (finding the existence of subject matter jurisdiction to be a threshold issue); *Moir v. Greater Cleveland Reg'l Transit Auth*., 895 F.2d 266, 269 (6th Cir. 1990) (holding that without subject matter jurisdiction a court cannot consider the merits of a case and may not assume subject matter jurisdiction to reach the merits).

A.  Jurisdiction

Homing in on the Complaint's sparse jurisdictional statement, the Defendant argues that Paluso's entire claim should be dismissed because "Paluso's Complaint offers no grounds for subject matter jurisdiction" as required by Federal Rule of Civil Procedure (8)(a)(1). (R. 27). While the Court agrees that the Complaint's jurisdictional statement is underdeveloped, the Defendant's argument is misguided and overly technical.

Contrary to the Defendant's suggestion, the Court is not confined to the Complaint's jurisdictional statement. Instead, when determining whether it has jurisdiction, the Court must read the Complaint "holistically." *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 397 (6th Cir.

2016) (citing *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 5 (1st Cir. 1999); *J&J Sports Prods., Inc. v. Rose's Dream, Inc.*, 818 F. Supp. 2d 1, 3 (D.D.C. 2010)). And when the basis for federal jurisdiction is clear from the face of the complaint, or when the complaint pleads facts from which federal jurisdiction may be properly inferred, an action need not be dismissed due to an insufficient jurisdictional statement. *Id.* (citing *Harary v. Blumenthal*, 555 F.2d 1113, 1115 n.1 (2d Cir. 1977)). Thus, the question is not, as the Defendant suggests, whether the Complaint's jurisdictional statement states adequate grounds to confer jurisdiction. The question is whether the Complaint—as a whole—states adequate factual allegations from which federal jurisdiction is clear or may be inferred.

Paluso's Complaint, viewed holistically, adequately states grounds for the Court's jurisdiction over his ADEA and hostile work environment claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). Federal question jurisdiction exists where "a well-pleaded complaint establishes either that a federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983). Here, the Complaint alleges violations of the Age Discrimination In Employment Act of 1967 (ADEA), which resulted in a hostile work environment. The ADEA is a federal statute, providing federal employees a cause of action. *See* 29 U.S.C. S. § 633a. Furthermore, in the Sixth Circuit, a hostile work environment claim is available under the ADEA. *See Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996). Thus, the Court is satisfied that the complaint states grounds for the Court's jurisdiction over Counts I and

II, Paluso's ADEA and hostile work environment claims.[1]

However, the Court is not satisfied that it has jurisdiction over Paluso's appeal from the MSPB decision upholding his termination. An extremely complex statutory framework governs the process by which a federal employee may challenge an alleged discriminatory termination. *See Bailey v. Henderson*, No. 99-4082, 2000 U.S. App. LEXIS 24028, at *10 (6th Cir. Sep. 21, 2000); *Ballard v. TVA*, 768 F.2d 756 (6th Cir. 1985); *see also* 29 C.F.R. §§ 1614.302-.310; 5 C.F.R. §§ 1201.151-.175 (1999). Under the Civil Service Reform Act of 1978, federal employees may appeal certain drastic adverse employment actions, such as suspensions and terminations, to the Merit Systems Protections Board. Typically, a final MSPB decision must be appealed to the United States Court of Appeals for the Federal Circuit within sixty days of the decision becoming final. 5 U.S.C. § 7703(b)(1)(A). But there is an exception. If the employee alleges an adverse employment action serious enough to warrant MSPB review *and* claims that adverse employment action was based on discrimination in violation of another federal statute, such as the ADA or ADEA, the employee's case is "mixed." *See* 5 U.S.C. § 7703(b)(2). In mixed cases, the employee may appeal from the MSPB decision to federal district court, instead of the federal circuit court. Or the employee, instead of immediately seeking judicial review, may seek review from the Equal Employment Opportunity Commission. If the employee elects immediate judicial review in district court, instead of EEOC review, the employee must file in federal district court within thirty days of receiving notice of the MSPB board's final decision pursuant to 5 U.S.C. § 7703(b)(2).[2] As other court's in the district have noted, this thirty-day limit is "mandatory,

---

[1] The Defendant's argument that Paluso has failed to exhaust his administrative remedies prior to filling his ADEA claims, as they point out in their Reply, is not a jurisdictional argument. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). Thus, that argument will be addressed when the Court reaches the merits.

[2] This is by no means an exhaustive summary of the process. It leaves out alternate available options and certain steps. It only relates those parts of the process relevant to those issues before the Court.

jurisdictional, and not subject to equitable tolling." *Abell v. Dep't of Veterans Affairs*, No. 3:18-CV-532-CRS, 2018 U.S. Dist. LEXIS 158997, at *4 (W.D. Ky. Sep. 18, 2018) (citing *Hilliard v. U.S. Postal Serv.*, 814 F.2d 325, 327 (6th Cir. 1987); *Johnson v. U.S. Postal Serv.*, 64 F.3d 233, 238 (6th Cir. 1995)).

Here, the Defendant argues that the Court has no jurisdiction over Paluso's appeal because he filed with this court thirty-five days after the final MSPB decision—five days late. Paluso does not dispute that his MSPB claim was mixed or that Paluso had only thirty days to file with the district court as allowed by 5 U.S.C. § 7703(b)(2). Nor does Paluso dispute that the MSPB initial decision is dated April 11, 2018, that it became final on May 16, 2018, and that he did not amend his Complaint to appeal the decision until thirty-five days later on the June 20, 2018. (R. 8-2; R. 8). Instead, Paluso argues that "the Defendant has not filed a card indicating when Paluso signed for the certified mail on either the initial decision issued on April 11, 2018 or the final decision," and equitable tolling should apply. Both Paluso's argument fail.

First, the Defendant is not required to prove actual receipt of the initial or the final decision through registered mail. The burden of proving jurisdiction rests with the party asserting it. *Kokkonen v. Guardian Life Ins*. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (citations omitted)). Furthermore, nothing in the Record would suggest that Paluso did not timely receive the MSPB's initial decision. Simply put, the "employee [ ] 'receives notice' of the final decision of the Board on the very day the initial decision becomes the final decision of the Board, and must file for judicial review within 30 days of that date."

Second, equitable tolling, as already noted, is not applicable to 5 U.S.C. § 7703(b)(2)'s

30-day time limitation. *Glarner v. United States*, 30 F.3d 697, 701 (6th Cir. 1994) ("[I]n enacting

§ 7703(b)(2), Congress rebutted the presumption of equitable tolling."). Therefore, this Court

must dismiss Paluso's untimely MSPB appeal for lack of subject matter jurisdiction.

Similarly, the Court is also not satisfied that it has jurisdiction over Paluso's invasion of

privacy and intentional infliction of emotional distress claims. The Defendant argues that the

Court lacks jurisdiction because Paluso fails to allege he has exhausted his administrative

remedies under the Federal Tort Claims Act (FTCA). Paluso responds that he has indeed failed

to file a claim under the FTCA, but that discovery should be permitted because the right to

privacy is a constitutional one. The Court disagrees.

As sovereign, the United States is entitled to immunity from suit absent its consent.

*Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993). This immunity also extends to all the

United States' agencies, which includes the Department of Agriculture. *See Id.* (citing United

*States v. Testan*, 424 U.S. 392, 96 S. Ct. 948, 47 L. Ed. 2d 114 (1976)). The FTCA waives

sovereign immunity for certain torts and allows them to be brought against the United States to

the same extent that state-law would impose liability on a private individual in similar

circumstances. *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995). "The FTCA grants a

district court subject matter jurisdiction over such a claim only if it has already been presented to

the agency for administrative settlement and the agency has denied the request." *Turner v. Ives*,

No. 6:11-CV-00340-KSF, 2012 U.S. Dist. LEXIS 10223, at *11 (E.D. Ky. Jan. 27, 2012) (citing

*Garrett v. United States*, 640 F.2d 24, 25 (6th Cir. 1981); *see also* 28 U.S.C. § 2675(a). This

requirement to exhaust one's administrative remedies is jurisdictional. *Woodcox v. United States*,

No. 3:16-CV-00814-GNS, 2018 U.S. Dist. LEXIS 64395, at *20 (W.D. Ky. Apr. 17, 2018)

(citing *Bumgardner v. United States*, 469 F. App'x 414, 417 (6th Cir. 2012) (citing *Joelson v.*

*United States*, 86 F.3d 1413, 1422 (6th Cir. 1996))). Therefore, if a plaintiff brings federal suit prior to exhausting his or her administrative remedies, the federal court must dismiss the action based on a lack of subject matter jurisdiction. *Id.*

Here, Paluso admits that he failed to exhaust his administrative remedies, as required by the FTCA, prior to bringing claims in this Court against the United States Department of Agriculture for intentional infliction of emotional distress and invasion of privacy, both of which sound in tort law. Therefore, the Court lacks subject matter jurisdiction over these claims and must dismiss them.

Paluso's argument that the Court should allow discovery on these claims is unavailing and entirely without legal support. The Court is without power to allow discovery concerning claims it has no jurisdiction over. Counts IV and V are dismissed.

B. Counts I and II, EEO Compliant FS-2016-00557, the Failure to Exhaust Administrative Remedies, and the Continuing Violation Doctrine.

Although not entirely clear, the Court interprets Counts I and II of Paluso's Complaint to allege, violation of the ADEA, retaliation, and a hostile work environment in connection with the ADEA claim. The Defendant claims that Counts I and II of the Complaint stem from EEO Complaint FS-2017-00557. The Defendant further argues that those Counts must be dismissed because FS-2017-00557 Claims 1, 2, and 3(a)-(e) are unexhausted, and claim 3(f) fails to state a claim upon which relief can be granted because Paluso alleges no adverse employment action therein. Paluso's Response concedes the Defendant's argument in large part but maintains that Counts I and II remain viable under the continuing violation doctrine. The Court, to some extent, agrees with Paluso.

The ADEA provides federal employees faced with perceived age discrimination two options. The employee may invoke administrative proceedings by contacting an EEO Counselor

15

within 45 days of the alleged discriminatory conduct, or they may sue directly in federal district court provided they give the EEOC notice of their intent to sue within 180 days of the alleged discriminatory conduct. *See* 29 U.S.C. § 633a(b)-(c), 29 C.F.R. § 1614.103. If the plaintiff has elected to pursue the first option, the federal district court must dismiss for failure to exhaust administrative remedies any claims that were not brought to an EEO Counselor within 45 day of the alleged conduct. *E.g., Taylor v. Donahoe*, 452 F. App'x 614, 619 (6th Cir. 2011).

Here, Paluso chose the first option, but he does not dispute that all the allegations in Complaint FS-2017-00557, except 3(f), were properly dismissed as untimely at the administrative level because he waited roughly ten months to contact an EEO counselor. Instead, he claims the continuing violation doctrine applies, rending "all administrative deadlines not applicable," and allowing recovery for all allegations originally brought in EEO Complaint FS-2017-00557 and now before the Court. The Defendant disagrees, arguing that "after *Morgan*, the continuing violation doctrine may not be invoked to allow recovery for acts that occurred outside the [applicable 45 day period]," (R. 30) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). Both Parties mischaracterize the continuing violation doctrine's scope.

Traditionally, the Sixth Circuit found the continuing violation doctrine applicable in scenarios where the plaintiff alleged serial discriminatory incidents, all of which were related and one of which had occurred within the applicable filing period." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). However, in *AMTRAK v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061 (2002), the Supreme Court limited the continuing violation doctrine to exclude its application from circumstances of serial violation where those violations consisted of discrete acts. *Id.* at 2072 ("Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing

charges alleging that act."). In so doing, however, the *Morgan* Court carved out an exception for where plaintiff's had alleged a hostile work environment. The Court reasoned "that the incidents comprising a hostile work environment are part of one unlawful employment practice," as opposed to separate discrete incidents, and "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability." *Id.* at 2075. Thus, contrary to the Defendant's suggestion, *Morgan* did not abrogate the continuing violation doctrine so completely. However, nor, as Paluso suggests, does the continuing violation doctrine apply automatically or render all administrative deadlines inapplicable.

In order to determine whether the continuing violation doctrine applies here, the Court must answer two questions: has Paluso alleged a hostile work environment, and has Paluso alleged an act within the applicable 45-day period that would contribute to that claim? If the answer to both questions is yes, the continuing violation doctrine applies.

While Paluso's Complaint before the Court explicitly alleges a hostile work environment in connection with his ADEA claims, as the Defendant points out, EEO Complaint FS-2017-00557 does not. (R.1-1). The Court may not entertain new claims that were not alleged in a plaintiff's EEO filings. *See Rumburg v. Sec'y of the Army*, No. 10-11670, 2011 U.S. Dist. LEXIS 45240, at *33 (E.D. Mich. Apr. 27, 2011) ("Even assuming such a cause of action does exist, Plaintiff has failed to exhaust the claim because he did not assert it during the EEOC proceedings."); *See also Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359 (6th Cir. 2010) (holding that the plaintiff had failed to exhaust administrative remedies on a hostile work environment claim brought to federal district court because instead of claiming hostile work environment in his original EEO charge, the plaintiff had only claimed discrete acts of discrimination).

However, *pro se* EEO complaints "are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Younis*, 610 F.3d at 361 (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)). In other words, "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005). Furthermore, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Id.* (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)).

Here, the Court is satisfied that Complaint FS-2017-00557 contains sufficient allegations to have prompted EEO investigation into whether Paluso was being subjected to a hostile work environment. In Complaint FS-2017-00557, Paluso alleges numerous discrete incidents of discrimination. (R. 1-1). These discrete incidents of discrimination alone could not be expected to spawn investigation into whether Paluso was being subjected to a hostile work environment. *See Younis*, 610 F.3d 359. But Complaint FS-2017-00557 also alleges that Paluso was subjected to "various incidents of harassment" including, "on unspecified dates, management officials demean[ing], abus[ing], traumatiz[ing], antagoniz[ing] and treat[ing] [Paluso] differently." (R.1-1). The alleged discrete incidents in conjunction with the alleged harassment form the implication of a hostile work environment so that a reasonable EEO investigation could, and should, have included the possibility of a hostile work environment within its scope. In fact, it appears that the Final Agency Decision in FS-2017-00557 addressed the possibility of a hostile work environment claim. (R.1-1, p. 5) ("In determining whether a harassment complaint states a claim . . . the EEOC has repeatedly examined whether the alleged incidents of harassment, when

considered together and assumed to be true, are sufficiently severe or pervasive to state a hostile or abusive work environment claim."). Thus, the Court concludes Complaint FS-2017-0057 adequately alleged a hostile work environment.

Next, the Court must determine whether Paluso has alleged an act occurring within the 45-day period that would contribute to his hostile work environment claim. As already noted, Complaint FS-2017-00557 consists primarily of alleged discrete acts, which occurred well before the 45 days prior to Paluso initiating contact with the EEO Counselor. As already discussed, after *Morgan*, those discrete acts cannot be characterized as part of a continuing hostile work environment. *See Sasse v. U.S. Dept. of Labor*, 409 F.3d 773, 783 (6th Cir. 2005); *See also Hunter v. Green*, No. 07-14490, 2008 U.S. Dist. LEXIS 35664, at *16 (E.D. Mich. May 1, 2008) ("In other words, discrete acts of discrimination cannot be used to invoke the continuing violation doctrine."). However, Complaint FS-2017-00557 contains two allegations that are not discrete acts, and thus potentially applicable to Paluso's hostile work environment claims—Claim 3(b), which states that "on unspecified dates, management officials demeaned, abused, traumatized, antagonized and treated [Paluso] differently," and Claim 3(f), which states "on an unspecified dates, management refused to inform [Paluso] of how an alleged poor performance matter could be rectified." (R.1-1). Paluso does not dispute that Claim 3(b) occurred outside the 45 day period. This leaves Claim 3(f) as the only potentially timely claim by which Paluso may be able to invoke the continuing violation doctrine.

However, there are two potential issues with Claim 3(f). First, it is unclear when the conduct alleged by 3(f) occurred. Second, in isolation, Claim 3(f) fails to state a claim upon which relief can be granted. Neither potential issue, at this stage of the proceedings, would preclude Paluso from using Claim 3(f) as a timely anchor by which to invoke the continuing

violation doctrine.

First, "[f]ailure to exhaust administrative remedies in a timely manner is an affirmative defense, and the defendant bears the burden of pleading and proving this failure." *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008). Furthermore, the Court, upon a motion dismiss, must draw all reasonable inferences in the nonmoving Party's favor. *Garceau* v. City of Flint, 572 F. App'x. 369, 371 (6th Cir. 2014) (*citing Iqbal*, 556 U.S. at 677-79). Thus, the Defendant must prove that Claim 3(f) was brought to the EEO Counselor outside the 45 period—the Court may not assume so.

The Defendant fails to carry his burden. It is unclear from the record when exactly the conduct related to Claim 3(f) occurred. But the Final Agency Decision in FS-2017-00557, while dismissing the rest of the claims as untimely, does not dismiss Claim 3(f) as untimely. From this, the Court, at this stage of the proceedings, must assume that Claim 3(f) was brought within the applicable 45-day period.

Second, contrary to the Defendant's suggestion, the Court cannot consider Claim 3(f) in isolation, dismiss it for failure to state a claim, and then consequently dismiss Paluso's hostile work environment claim because he has failed to allege an act within the 45-day filing period. While discrete actions must be considered in isolation, in dealing with component acts of an alleged hostile work environment claim, the Court must "look to all the circumstances." *Morgan*, 536 U.S. at 116. As the *Morgan* Court points out, "in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 115. In other words, while claim 3(f) may fail to state a claim in isolation, it may still be considered as a contributing component to Paluso's hostile work environment claims. Thus, to dismiss claim 3(f) for failure to state a claim and, consequently, dismiss Paluso's hostile work environment claim because he had failed to

allege an act contributing to that claim within the applicable 45-day limit would be improper.

Therefore, Paluso has alleged a hostile work environment claim and an act within the applicable 45-day filling period that would contribute to that claim. Accordingly, the continuing violation doctrine applies, and the Defendant's argument fails. The Court, at this stage of the proceedings cannot dismiss Counts I or II based on failure to exhaust administrative remedies, nor will the Court dismiss the allegations made in FS-2017-00557 (3)(f) for failure to state a claim.

However, nor can the Court construe the continuing violation doctrine to render all administrative deadlines "not applicable," as Paluso suggests. The Court notes that Counts I and II would only survive to the extent they are supported by the allegations made in FS-2017-00557 Claims 3(b) and 3(f). The rest of the allegations made in FS-2017-00557, as already discussed, constitute discrete acts filed prior to the applicable 45-day filling period. Therefore, Paluso failed to exhaust administrative remedies with regard to those allegations, and the Court would not consider them. Nor, as Paluso's Response to the Defendant's Motion to Dismiss seems to suggest, does the continuing violation doctrine apply so as to allow the Court to consider Paluso's termination as part of his hostile work environment claim. Termination is explicitly named by the *Morgan* Court as the quintessential discrete act to which the continuing violation doctrine is inapplicable. *Id.* at 114. ("Discrete acts such as *termination* . . .") (emphasis added). In any event, as discussed in more detail below, the Court finds that it must dismiss Counts I and II on other Grounds.

C. Count III and Failure to Exhaust Administrative Remedies.

The Defendant argues that Paluso's constructive discharge claim, Count III, should be dismissed for two reasons. First, the Defendant argues that Paluso fails to state a claim because

Paluso never alleges he quit his employment. Second, the Defendant argues that Paluso has failed to exhaust his administrative remedies because he failed to raise constructive discharge in any of his EEO Complaints. Paluso, again, fails to dispute the Defendant's arguments. Instead, he asks the Court to construe his constructive discharge claim as a wrongful termination claim.

Whether the Court construes it as a constructive discharge claim or a wrongful termination claim, Count III must be dismissed. Regardless of whether Paluso has exhausted his administrative remedies with regard to a constructive discharge claim—which he has not for various reasons that the Court need not address at this time—any constructive discharge claim brought by Paluso must be dismissed. "To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit *and the employee must actually quit*." *Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999) (emphasis added). Paluso never quit. Instead he was terminated from service on January 26, 2018. (R.8-2).

Likewise, even if the Court construes Count III as a wrongful termination claim, it would have to be dismissed. As discussed above, Paluso appealed his termination to the MSPB. He then failed to appeal from the MSPB decision to this Court within 30 days. Thus, as already discussed at length above, the Court has no jurisdiction to entertain a discriminatory termination claim against the Defendant. Count III is dismissed.

D.  Failure to Effectuate Service

With only Counts I and II and Paluso's appeal from EEO Complaint FS-2016-191 still pending, the Court finally comes to Ms. Bratcher's failure to effectuate timely service. The Defendant moves the Court to dismiss this action pursuant to Rule 4(m) for failure to effectuate timely service.

Rule 4(m) provides:

Time Limit for Service. If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Thus, if good cause is shown for the failure to effectuate service, the Court must extend the service window. If good cause is not shown, the Court has discretion in deciding whether to dismiss the action or extend the service window. *See Bradford v. Bracken County*, 767 F. Supp. 2d 740, 753 (E.D. Ky. 2011). Paluso bears the burden of showing good cause under this Rule. *See Id.* (citing Habib v. Gen. Motors Corp., 15 F.3d 72, 73 (6th Cir. 1994); *see also Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 521 (6th Cir. 2006). While Rule 4(m) does not define what constitutes good cause, the Sixth Circuit holds that vague claims of hardship or unexpected difficulties in perfecting service do not constitute good cause. *See, e.g., Nafziger*, 467 F.3d at 521-22.

Here, the only "good cause" asserted by Paluso's counsel for untimely service by nearly a year boils down to essentially this—serving the federal government is difficult. Service upon the federal government is not so difficult as to take a year's time. On two occasions the Court provided instruction to counsel on how to properly effectuate service.

Because no good cause has been provided, the Court must exercise its discretion to determine whether to dismiss Paluso's claims. In exercising its discretion the Court is aware that other district courts have typically considered the following five factors:

(1) whether a significant extension of time is required; (2) whether an extension of time would cause actual prejudice to the defendant other than the inherent prejudice in  having to defend the lawsuit; (3) whether the defendant had actual notice of the lawsuit; (4)

whether dismissal of the complaint without prejudice under Rule 4(m) would substantially prejudice the plaintiffs, (whether dismissal might cause the plaintiffs suit to be time-barred by the statute of limitations); and (5) whether the plaintiffs have made diligent, good faith efforts to effect proper service of process.

See e.g. *Warrior Imps., Inc. v. 2 Crave*, 317 F.R.D. 66, 70 (N.D. Ohio 2016); *Winston v. Bechtel Jacobs Co., LLC*, No. 3:13-CV-192-TAV-CCS, 2015 U.S. Dist. LEXIS 31584, at *9 (E.D. Tenn. Mar. 16, 2015). The Court will follow suite and consider the factors in turn.

First, a significant extension of time would be required. proper service was not effectuated until over a year after the Complaint was filed. While the Court provided counsel guidance regarding service, counsel never moved for, nor received from the Court, permission to effectuate untimely service or extend the service window. In order to find Paluso's service timely, the Court would have to extend the service window by over three times its original 120-day limit. This factor weighs heavily in favor of dismissal.

Second, an extension of time would cause actual prejudice to the Defendant. As the Defendant points out, Damages, if won, will have continued to accrue over the year that it took Paluso to effectuate service. Thus, the Defendant would suffer prejudice should Paluso be granted an extension. This Factor also weighs in favor of dismissal.

Third, there is nothing in the Record from which the Court could determine whether the Defendant had actual notice of the lawsuit. However, it seems that Paluso had managed to serve various government officials prior to finally effectuating proper service. This factor is a wash.

Fourth, dismissal would prejudice Paluso. Because more than 90 days have passed since the EEOC issued its right to sue letters on all of Paluso's complaints, all of Paluso's claims will likely be time-barred upon dismissal. Effectively, the dismissal while purporting to be without

prejudice will be with prejudice. Thus, this Factor weighs heavily in favor of extension.

Finally, counsel has not made *diligent*, good faith efforts to effectuate proper service. While counsel might have been attempting to effectuate proper service over the course of a year, her efforts cannot be characterized as diligent. She was provided with guidance by the Court on two separate occasions and still failed to effectuate proper service. That being said, the Court understands the inherent difficulty in serving a United States agency. And the Court notes that Ms. Bratcher was, at the very least, trying. However, the Court ultimately finds that this factor weighs in favor of dismissal.

Public policy, the Sixth Circuit, and particularly this Court all prefer resolving cases on their merits. *Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993) (citing *Nealey v. Transp. Maritima Mexicana*, S.A., 662 F.2d 1275, 1279 (9th Cir. 1980)). And the Court understands the consequences of dismissal for Paluso are acutely harsh. However, "when there is no good cause for a plaintiff's failure to comply with Rule 4(m), 'a district court may in its discretion still dismiss the case, even after considering that the statute of limitations has run and the refiling of an action is barred.' *Winston v. Bechtel Jacobs Co.*, LLC, No. 3:13-CV-192-TAV-CCS, 2015 U.S. Dist. LEXIS 31584, at *14 (E.D. Tenn. Mar. 16, 2015) (citing *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1306 (3d Cir. 1995); *accord Cardenas v. City of Chicago*, 646 F.3d 1001, 1006—07 (7th Cir. 2011); *Kurka v. Iowa County*, 628 F.3d 953, 959—60 (8th Cir. 2010); *Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007).; *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1133 (11th Cir. 2005)). And as other courts have pointed out "the requirement of proper service of process 'is not some mindless technicality.'" *Winston v. Bechtel Jacobs Co., LLC*, No. 3:13-CV-192-TAV-CCS, 2015 U.S. Dist. LEXIS 31584, at *14 (E.D. Tenn. Mar. 16, 2015) (quoting *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (quoting *Del*

*Raine v. Carlson*, 826 F.2d 698, 704 (7th Cir. 1987))). It is, instead, a component part of a defendant's constitutional right to due process. *Id.* (Citing *Omni Capital Int'l Ltd. v. Rudolph Wolff & Co.*, 484 U.S. 97, 104, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987); *Friedman*, 929 F.2d at 1156).

Ultimately, it is the Court's responsibility to "interpret the Rules neither liberally nor stingily, but only as best [it] can, according to their apparent intent." *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 319 (Scalia, J., concurring in the judgment). With this in mind, and after weighing the factors enumerated above, the Court finds that it cannot extend the service window by over a year. Simply put, to do so would render Rule 4(m) wholly meaningless. Thus, the Court need not address the Defendant's remaining arguments. The Court at this time must dismiss Paluso's action without prejudice.

CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss, (R. 27), is GRANTED. All claims against Defendant Sonny Perdue, Secretary United States Department of Agriculture, are dismissed without prejudice Pursuant to Federal Rule of Civil Procedure 4(m) for failure to effectuate timely service.

An appropriate judgment shall issue.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

June 11, 2019

cc: Counsel of Record